UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| LUIS FERREIRAS, | : |
|     Plaintiff | : |
| | : |
|     v. | :   CIVIL NO. 4:CV-04-1799 |
| | : |
| | :   (Judge McClure) |
| YORK COUNTY, PENNSYLVANIA, | : |
| ET AL., | : |
|     Defendants | : |

## **MEMORANDUM AND ORDER**

March 1, 2006

**Background**

This civil rights action was initiated by Luis Ferreiras ("Plaintiff") regarding his prior detention by the Bureau of Immigration and Customs Enforcement (ICE) at the York County Prison, York, Pennsylvania. Ferreiras is represented by counsel.

As a result of a March 15, 2005 case management conference, the Plaintiff's motion for leave to file an amended complaint was granted and his proposed amended complaint (Record document no. 18) was accepted. By Memorandum and Order dated July 18, 2005, Secretary Tom Ridge's motion to dismiss was granted.

The remaining Defendants named in the amended complaint are York

County; Commissioner James Donahue of the York County Prison Board of Inspectors; and the following officials of the York County Prison: Warden Thomas Hogan, Deputy Warden Roger Thomas, and Complaint Supervisor Beata Erni (hereinafter the "York County Defendants"). Ferreiras is also proceeding against Prison Health Services ("PHS"), a correctional healthcare services organization. All of the York County Defendants are named in their individual and official capacities.

Ferreiras is a former ICE detainee who was confined in the York County Prison from "approximately October, 2002 to March, 2003." Record document no. 18, ¶ 11. The Plaintiff was released from ICE custody in July, 2004. While housed at the York County Prison, Ferreiras requested treatment "for broken and decayed teeth that were causing him pain" and to have "a broken partial replaced." Id. at ¶ 14. As a result of his dental problems, Plaintiff contends that he had difficulty eating, a problem purportedly heightened by the fact that he is HIV positive.

During early December, 2002, Ferreiras maintains that his request for dental treatment was denied. As a result, Plaintiff initiated an institutional grievance. In a December 13, 2002 response to the grievance, Complaint Supervisor Erni informed Plaintiff that due to his federal detainee status, he would have to wait one

year before becoming eligible for dental services. Following an administrative appeal, Deputy Warden Thomas issued a reply on December 20, 2002 noting that Plaintiff had insisted on having his partial replaced and refused to have it repaired. Thomas' response also stated that a request for a denture filling had been sent to the ICE for approval. Furthermore, Thomas purportedly added that because Ferreiras' condition was not serious it did not require immediate attention and that he would have to be incarcerated for one (1) year before the ICE would consider approval of his request for dental work.

Plaintiff filed a further administrative appeal with the York County Commissioners. On January 15, 2003, the Assistant York County Solicitor partially granted this appeal by referring Ferreiras' request for dental treatment to the Complaint Review Board. Before any further action could be taken, Plaintiff was transferred to a different correctional facility.

The amended complaint contends that the policy or practice of requiring the Plaintiff to wait one (1) year before being afforded dental treatment violates the Eighth Amendment. As relief, Ferreiras seeks compensatory and punitive damages as well as declaratory and injunctive relief.[1]

Presently pending is a summary judgment motion filed by the York County

---

[1] This Court previously concluded that as a result of Plaintiff's release from confinement, his requests for injunctive and declaratory relief were moot.

Defendants.  See Record document no. 19.  Plaintiff was granted until November 28, 2005 in which to file a response to that dispositive motion.  By Order dated November 14, 2005, Plaintiff's obligation of filing a response to the York County Defendants' motion for summary judgment insofar as it pertains to Defendant York County was deferred pending further order of Court.  The motion (with exception of the arguments pertaining to Defendant York County) has been briefed and is ripe for consideration.

**Discussion**

    **A.**    **Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]he standard [for granting summary judgment]

mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, supra, 106 S.Ct. at 2553 and 2554.  Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  Id.  In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

### B.   Defendants Donahue, Hogan, and Erni

Ferreiras' opposing brief states, "Plaintiff no longer seeks to pursue claims against James Donahue, Thomas Hogan, and Beata Erni."  Record document no.

42, p.2. Plaintiff's statement will be construed as a request seeking voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2). Ferreiras' request will be granted and the claims against Defendants Commissioner Donahue, Complaint Supervisor Erni, and Warden Hogan will be dismissed without prejudice. The Court will discuss the summary judgment motion only to the extent that it pertains to Deputy Warden Thomas.

### C.     Absolute Immunity

It is undisputed that Deputy Warden Thomas investigated and ultimately denied the Plaintiff's administrative appeal from the denial of his dental care related grievance. The York County Defendants relying on Borzych v. Frank, 340 F.Supp.2d 955 (W.D. Wi.  2004), argue that Thomas is entitled to absolute immunity because the claims against him are based on actions taken while acting in "an adjudicatory function." Record document no. 20, p. 12.

Plaintiff contends that the York County Defendants' reliance on Borzych is misplaced because that decision has been overruled. Ferreiras adds that Thomas' actions in reviewing the Plaintiff's administrative grievance does not fall within the limited circumstances protected by quasi judicial absolute immunity. This Court agrees.

Absolute immunity extends only to officials exercising adjudicatory or

otherwise judgmental functions.  Prentice v. Hodge, 1992 WL 209135 (E.D. Pa. Aug. 18, 1992).  In Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986), the Court of Appeals for the Third Circuit recognized that state Parole Board members are not judicial officers but, rather, they are executive officers who are not entitled to absolute immunity.  The United States Supreme Court has held that members of a prison disciplinary committee who preside over cases in which prisoners are charged with disciplinary infractions are entitled to qualified, not absolute immunity.  Cleavinger v. Saxner, 474 U.S. 193, 205-6 (1985).

With respect to the York County Defendants' argument, in Lindell v. O'Donnell, 2005 WL 2740999 * 14  (W.D.WI  Oct. 21, 2005), the district court judge who authored Borzych acknowledged that "my earlier holding in **Borzych** and other cases was erroneous."   The court in Lindell added that although correctional officials within the inmate complaint review system act as fact gathers and  finders, they "fail to meet the prevailing standard for absolute immunity as set forth in *Cleavinger*."  Id. at *15.

The actions attributed to Thomas clearly did not transpire during a hearing or  adversarial proceeding.  In light of the standards announced in Cleavinger and Lindell, the York County Defendants have not offered any competent authority to support their argument that Deputy Warden Thomas is entitled to absolute

immunity with respect to actions taken during his review of Plaintiff's administrative appeal. Consequently, based on an application of the Cleavinger and Lindell standards, the request for absolute immunity in favor of Deputy Warden Thomas will be denied.

### D.   Eighth Amendment

The York County Defendants next contend that there are no facts asserted which show that Defendant Thomas violated the Eighth Amendment by being deliberately indifferent to Thomas' medical needs. Plaintiff argues that his dental condition constituted a serious medical need. He adds that his complaint asserts that Deputy Warden Thomas was aware that he had a serious dental problem which required immediate treatment and failed to act despite having knowledge of a substantial risk of serious harm.

Pursuant to the Supreme Court's decision in Estelle v. Gamble, 429 U.S. 97 (1976), an inmate plaintiff must demonstrate that prison officials have breached the standard of medical treatment to which he was entitled. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." Id. at 103.

However, a constitutional violation does not arise unless there is "deliberate

indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain." Id. at 104 (citation omitted).  The Court of Appeals for the Third Circuit has held that not every injury or illness enjoys constitutional protection; only serious medical needs are actionable.  Colburn v. Upper Darby Township, 946 F.2d 1017, 1023 (3d Cir. 1991); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).  Furthermore, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

A later decision by the Supreme Court addressed the issue of what standard should be applied in determining deliberate indifference in Eighth Amendment cases.  The Court established that the proper analysis is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).   As noted earlier, the Court of Appeals for the Third Circuit in Durmer,  added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff.  However, where a failure or delay in providing prescribed treatment is

deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.

Under Farmer, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  In Beers-Capitol it was also recognized that a defendant's knowledge of a risk can be proved indirectly by circumstantial evidence.

Pursuant to the above discussion, a prisoner plaintiff must establish that he had a serious medical need.  Ferreiras states that he had "broken and decayed teeth," and "a broken partial" which made it difficult for him to eat, a condition which was propounded by his HIV.  Record document no. 42, p. 8.  The moving Defendants indicate that Ferreiras did not have a serious medical need because he was not in pain, refused the option of a tooth extraction, and would not accept any treatment except for a new partial or denture.

A copy of a January 15, 2003 dental authorization issued by the United States Public Health Service submitted by Ferreiras provides that the inmate had a

partial denture which replaced four (4) teeth.  See Record document 46, Exhibit P, p. 16.  The partial denture was "fractured."  Id.  According to the submitted dental records, a treating dentist "has recommended extractions, a new denture will not be made if these teeth are not extracted because they will not be suitable abutments for a partial denture."  Id.  However, Ferreiras was not in favor of extractions but was requesting a new denture.  The Public Health Service gave approval for repair of the partial denture, if possible, and other treatment.  It is noted that Plaintiff was transferred before the authorized dental work could be done.

It is undisputed that Ferreiras had broken teeth and cavities and a broken partial denture.  As a result of his condition, the York County Prison Dental Department requested and was eventually given authorization to provide treatment.  Based on those undisputed facts, this Court is satisfied that Plaintiff has sufficiently established that he was suffering from a serious medical need.

Beata Erni, the Complaint Supervisor at the York County Prison denied a grievance by the Plaintiff on December 13, 2002.  Erni's response stated in relevant part, "[w]ithout INS approval the dental department does not provide services to detainees."  Record document no. 54, ¶ 4.  On or about December 20, 2002, Deputy Warden Thomas denied the Plaintiff's administrative appeal.  A further appeal was taken to the prison's Solicitor.  The Solicitor concluded that

because Plaintiff was infected with HIV, and stating that he was in pain due to a broken denture, his request for immediate dental care should be reviewed by the prison's Complaint Review Board.

Thomas is clearly a non-medical defendant. Hence, the Durmer standards are applicable to Plaintiff's claims against him. It is undisputed that after receiving Ferreiras' administrative appeal, the Deputy Warden sent a request to the prison's Dental Department on December 18, 2002 asking for a determination as to whether Plaintiff's dental problem was so serious that it required immediate attention and could not wait for the one year conditional rule. See Record document no. 54, Exhibit E, p. 22.

In a response (which was set forth on the same request form) dated the following day, the Dental Department acknowledged that Plaintiff had cavities, broken teeth and a broken partial. The response added that Ferreiras was in no pain, didn't want treatment unless he could get a new partial or denture, was told he could have the tooth removed, and "in my medical opinion patient is not in any immediate serious condition." Id. The response additionally noted that a request for approval of a denture filling had been sent to the ICE and the prisoner had declined an offer for removal of the tooth.

In a sworn affidavit, Christopher W. Paluch, D.M.D. states that he

12

performed a full dental examination of the Plaintiff on December 16, 2002. According to Doctor Paluch, the inmate did not complain of pain, had a broken partial denture, two teeth which could not be restored, and two cavities. See id. at ¶ 8. In addition, "Ferreiras decided if his existing denture was not going to be repaired, and a new denture was not going to be put in, he did not want his teeth extracted." Id. at ¶ 14. Doctor Paluch acknowledges that he explained to the prisoner that under ICE policy no prosthetic work including dentures could be performed until he was in prison for at least one year. The declarant adds that in his opinion the Plaintiff did not have an 'immediate, serious medical or dental condition." Id. at ¶ 11.

One day after receiving a response from the Dental Department, Deputy Warden Thomas denied the Plaintiff's appeal. It is noted that Thomas acted in a timely fashion with respect to his disposition of the administrative appeal. Furthermore, Defendant Thomas also acted properly by seeking an evaluation of the Plaintiff's present condition from the prison's Dental Department.

There are material issues of act in existence with respect to the handling of the Plaintiff's request for dental care. First, Erni's December 13, 2002 response, which took place prior to the examination by Doctor Paluch, noted that dental treatment could not be provided to Ferreiras without ICE approval. Thomas'

13

subsequent response contains no clarification that emergency dental treatment could be provided regardless of ICE policy.   Second, the dentist acknowledges informing the Plaintiff that he was not eligible for any prosthetic work including dentures under ICE policy.  See id. at ¶ 14.  The record also contains evidence that despite Doctor Paluch's averment that immediate treatment was not required, a request for a denture filing was sent to, and ultimately approved by federal officials.  As a result, it is unclear whether certain dental treatment was not provided to the Plaintiff because it was not warranted or rather, because it was contrary to ICE policy.

Thomas's inquiry to the prison's Dental Department asked whether Ferreiras' condition was so serious that it could not wait for the one year period. Clearly, the wording of that question shows that Thomas was aware of the ICE's aforementioned one year dental policy.  It is noted that the Deputy Warden's inquiry is dated  two days after Doctor Paluch's examination (which occurred after Ferreiras' initiation of an institutional grievance).  Deputy Warden Thomas' response echoed Doctor Paluch's opinion that there was no need for immediate treatment.  It also added that although a request for a denture filling was sent to the INS, it was unlikely that the request would be approved.

Based on this Court's review of the record, there is an issue as to whether

14

the Plaintiff was not provided with needed dental treatment because said care was precluded by ICE policy or because the prisoner did not wish to undergo the recommended course of treatment.  While Doctor Paluch states that there was no immediate need for treatment, a request for authorization to provide certain dental care was sent to federal officials.  Paluch's affidavit could also be construed as establishing that the dentist was under the impression that he could not perform any immediate prosthetic work.  Furthermore, nowhere in Thomas' inquiry is there any statement advising the dental department that any needed treatment could be provided regardless of ICE policy.

In conclusion, there is clearly a material issue of fact as to whether Doctor Paluch's recommended treatment was generated or influenced by the ICE policy. Based on the references to the ICE policy made by Complaint Supervisor Erni, Doctor Paluch, and Thomas, it is conceivable that a failure to recommend or provide needed treatment by the prison Dental Department was based on a non-medical reason.  As a result of this Court's application of the <u>Durmer</u> standards to the record, it cannot be conclusively determined at this juncture that Deputy Warden Thomas' actions did not constitute deliberate indifference.

### E.     Qualified Immunity

The final argument for summary judgment raised on behalf of Deputy

Warden Thomas is that he is entitled to qualified immunity. Ferreiras' opposing brief counters that there is no entitlement to qualified immunity because he has alleged the deprivation of a clearly established constitutional right.

Qualified immunity is an affirmative defense which must be pleaded by the defendant official. Id.; Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995). In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997). It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), established a two part test for analyzing qualified immunity claims. See also Curley

v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002).  The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136.

With respect to the first prong of Saucier, this Court has concluded that Plaintiff's contention that the Deputy Warden's actions with respect to his request for dental treatment could set forth a viable constitutional claim under the standards announced in Durmer.   The second prong requires a determination as to whether the constitutional right at issue was clearly established.  If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 201.  A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

The standard for deliberate indifference to medical needs under Estelle and Durmer is well established. It would be clear to a reasonable prison official that denial or delay of needed dental treatment for a  non-medical reason states a viable claim of a clearly established constitutional right.  Based on an application of both prongs of Saucier, it is the conclusion of this Court that Deputy Warden Thomas' request for qualified immunity should be denied at this juncture.  Consequently,

17

**IT IS HEREBY ORDERED THAT:**

1. The York County Defendants' motion for summary judgment (Record document no. 19) is GRANTED IN PART.

2. Plaintiff's opposing brief is construed in part as requesting voluntary dismissal of his claims against Defendant Donahue, Hogan and Erni.

3. The Plaintiff's request to voluntarily dismiss his claims against Defendants Donahue, Hogan, and Erni (Record document no. 42, p. 2) is GRANTED.

4. Deputy Warden Thomas' request for summary judgment is DENIED.

    s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge